J-S20045-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMBER P. WRIGHT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYSHON HASTY | : | |
| | : | |
| Appellant | : | No. 2431 EDA 2025 |

Appeal from the Order Entered August 22, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 2506V7281

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                        **FILED JULY 21, 2026**

Appellant, Tyshon Hasty ("Father"), appeals from the order entered in the Philadelphia County Court of Common Pleas, under the Protection from Abuse ("PFA") Act,[1] in favor of Appellee, Amber P. Wright ("Mother"). We affirm.

The relevant facts and procedural history of this appeal are as follows. Mother and Father began dating in 2014. Thereafter, the parties lived together. H.H. ("Child") was born in 2015. In 2020, the parties broke up and Father moved out of the residence. In 2021, the court entered a custody order providing shared legal and physical custody of Child, "with [Mother] having custody during the first half of the month, and [Father] having custody

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

during the second half of the month." (Trial Court Opinion, filed 11/17/25, at 2).

On June 18, 2025, Mother filed a PFA petition against Father. In the petition, Mother alleged multiple instances of abuse. Specifically, Mother claimed that Father sent multiple "memes" about their relationship, Father appeared at Mother's residence unannounced and uninvited, and Father choked Mother in front of Child. (*See* PFA Petition, filed 6/18/25, at 3). Mother also asserted that police responded to her home after Father falsely reported that someone in the residence possessed a firearm. Based upon these allegations, the court issued a temporary PFA order and scheduled a hearing on the matter.

Following a continuance, the court conducted a PFA hearing on August 22, 2025. At that time, the court received testimony from Mother, who appeared *pro se*. Father appeared with counsel and did not testify. At the conclusion of the hearing, the court issued a final PFA order in favor of Mother. The order remains in effect until August 21, 2026, and it directs Father not to abuse, harass, stalk, or threaten Mother.

On September 19, 2025, Father timely filed a notice of appeal. The court ordered Father to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on September 22, 2025. Father timely filed a Rule 1925(b) statement on October 14, 2025.

Father now raises one issue for this Court's review:

> Did the trial court err in granting a final [PFA] order in favor of [Mother] and against [Father] when the evidence presented at trial did not make out that [Father] had abused [Mother] as defined in the [PFA] Act?

(Father's Brief at 5).

On appeal, Father contends that the trial court's questions to Mother, who appeared *pro se* at the PFA hearing, assumed that Father provided false information to the police regarding the presence of a firearm at Mother's residence. Father argues that the police responded to Mother's home only to effectuate a previously planned custody exchange. Moreover, Father argues that "[t]here is no reason to assume, as the [c]ourt did, that police encounters are potentially more dangerous to civilians when police believe civilians possess guns." (*Id*. at 12). Additionally, Father maintains that Mother's testimony merely demonstrated her annoyance with Father, and it did not prove that Mother feared Father. While Father acknowledges that Mother's allegation of strangulation constitutes assault, he argues that the incident must be viewed in context. Specifically, Father insists that the incident occurred over five years prior to the filing of the PFA petition, Mother did not press charges, and it did not impact their subsequent custody exchanges. Father concludes that the court erred in finding that he committed "abuse" as defined by the PFA Act, and this Court must vacate the final PFA order entered in favor of Mother. We disagree.

When examining a challenge to the sufficiency of the evidence supporting a PFA order, our standard of review is as follows:

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*S.G. v. R.G.*, 233 A.3d 903, 909 (Pa.Super. 2020) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa.Super. 1999)).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008)). The PFA Act defines abuse as follows:

**§ 6102. Definitions**

**(a)     General rule.—**The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1)   Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2)   Placing another in reasonable fear of imminent serious bodily injury.

- 4 -

* * *

　　(5)　Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a)(1), (2), (5).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…." **Buchhalter, supra** at 1263 (quoting **Raker v. Raker**, 847 A.2d 720, 725 (Pa.Super. 2004)). "The intent of the alleged abuser is of no moment." **Id.** "While physical contact may occur, it is **not** a pre-requisite for a finding of abuse under [Section] 6102(a)(2) of the Act." **Fonner, supra** at 163 (emphasis added). "The victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." **Burke ex rel. Burke v. Bauman**, 814 A.2d 206, 208 (Pa.Super. 2002) (quoting **DeHaas v. DeHaas**, 708 A.2d 100, 102 (Pa.Super. 1998), *appeal denied*, 557 Pa. 629, 732 A.2d 615 (1998)).

Instantly, Mother testified that her safety concerns originated after a violent incident in 2020. At that time, Father came to her house while intoxicated, and he choked Mother in front of Child. (**See** N.T. PFA Hearing, 8/22/25, at 23-25). Mother explained that Father was "sitting on top of me,

- 5 -

on top of my legs, with his hands around my neck." (*Id.* at 25). Mother's sister had to enter the room to pull Father off Mother. Father then removed a firearm from his waistband and said, "I'll air … this bitch out right now." (*Id*. at 25-26). Mother interpreted Father's remark as a threat that he was going to open fire.

In September 2022, Father took offense to Mother's decision to date one of her coworkers. Father encountered Mother's new boyfriend during a custody exchange. The next day, Father called Mother's employer to "report that his daughter was in a car … not wearing a seatbelt and that she hurt her leg." (*Id*. at 27). This report resulted in Mother being contacted by her employer's human resources department.

Beginning in February 2025, Father began sending memes to Mother. Mother characterized the memes as warnings to "[b]e careful what you ask for because you might just get it." (*Id*. at 31). During this period, Mother indicated that Father also "does pop up at my house." (*Id.* at 30-31). Mother explained that Father's appearances caused her to fear for her safety:

> Why are you popping up at my house unannounced? There is nothing for you and I to talk about. If you needed to contact me or my daughter, you could have called before you came. I don't know what he's capable of.

(*Id.* at 23).

Father's unwanted interference in Mother's life culminated with the June 2025 incident that prompted Mother to file the PFA petition:

> Most recently, we were supposed to do a custody exchange

and he didn't show up at the correct time [on] the date.  I told him it was too late.  It was almost 10 o'clock.  We were getting ready for bed.

He contacted the police and told them I had a gun on the premises.

(*Id*. at 18).  Mother feared for her safety after the incident: "Anything is possible.  He can even harm me.  …  I don't feel safe with him contact[ing] me.  I want [no] communication with him."  (*Id*. at 28-29).

The trial court credited Mother's testimony and determined that sufficient evidence supported the final PFA order:

> The totality of [Father's] actions—entering her home without permission, strangling her, and threatening her with a gun in front of their child; repeatedly coming to [Mother's] house without notice whenever he wanted; making a false report to her employer; repeatedly sending her unwanted threatening memes; and, finally, making a false and dangerous report to law enforcement late at night—caused [Mother] to have such safety concerns that she sought a PFA order.  The court found [Mother's] testimony entirely credible, including her testimony about the incident that occurred in 2020.

(Trial Court Opinion at 12) (record citations and quotation marks omitted).  Our review of the record confirms this analysis.

Here, we agree with the court's finding that Mother's safety concerns were warranted.  (*See* Trial Court Opinion at 13).  Mother's testimony established Father's abusive behavior.  *See Fonner, supra*; *Burke, supra*.  Considering the applicable standard of review, we defer to the court's credibility determination in favor of Mother.  *See S.G., supra*.  Accordingly, we affirm the final PFA order entered in favor of Mother.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/21/2026